AARON LEHMAN, et. al., Respondents, *v.* EDWARD ROBERTS, Appellant.

*It seems* that a sale of land under execution against a third party will not be restrained at the suit of one in possession having the paper title.

D. contracted to sell certain lots in the city of New York to H., who agreed to erect buildings thereon and to pay the purchase-price on or before September 1, 1857. In July, 1857, H. assigned the contract and all his interest in the premises to M. On September 15, 1857, the purchase-money remaining unpaid, D. gave notice to H. that he would not extend the time. On October 1, 1857, all work on the houses was suspended and H. abandoned the contract. D. on that day served on H. a written notice, that in case of non-payment within ten days, he should re-enter and take possession. He did take possession and completed the buildings. On or about November 1, 1857, D. contracted to sell the lots to M., and on the twentieth of that month conveyed to him. On November 6, 1857, defendant filed a notice of lien under the Mechanics' Lien Law of 1851 (Chap. 513, Laws of 1851), against H. alone, for materials furnished to the latter; the notice stating that he owned the buildings. Defendant commenced proceedings against H. to foreclose the lien in January, 1858. It was not brought to trial until May, 1878. Findings were filed directing a decree for the sale of the right, title and interest of H. on November 16, 1858, in the premises. Judgment was entered in November, 1878, reciting the findings but adjudging that the premises be sold. Plaintiffs, who claimed title under the deed to M., brought this action to perpetually restrain the sale on the ground that it would create a cloud on their title. After its commencement and before trial, on motion of defendant his judgment against H. was amended to conform to the findings. Defendant claimed that the assignment of H. to M. was intended only as security for a loan. *Held*, that a sale under defendant's judgment could not affect plaintiffs' title, as under the statute nothing could be sold save the interest which H. had at the time the notice of lien was filed, and this was the case as well before the judgment was amended as afterward;

Statement of case.

that had this point been taken on the trial it would have been fatal to the maintenance of the action, but that as the point was not presented, as defendant has elected to try the question as to the title of H., and the parties have submitted, to a decision, on the merits of the claim of defendant as against plaintiffs' title, this court would not disturb the judgment which granted the relief sought; that assuming the pendency of the proceedings to foreclose the lien of defendant was constructive notice to all subsequent purchasers, it was notice only that he claimed a lien on the interest of H., if any ; not that the assignment of H., absolute on its face, was only as security, or that M. could not convey a good title ; that he, being in possession with apparent right to convey, purchasers from him were not bound to take notice of any latent equities between him and H., inconsistent with the absolute assignment.

Also, *held*, that even if the assignment was a security only, M. was, by virtue thereof, and the payment by him of the purchase-money, entitled to take a conveyance, and reimburse himself by a sale of the property; and all that H. or defendant could demand would be an accounting with him.

(Argued June 10, 1881; decided October 4, 1881.)

APPEAL from judgment of the General Term of the Court of Common Pleas, in and for the city and county of New York, entered upon an order made June 7, 1880, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*G. S. P. Stillman* for appellant. Plaintiffs were estopped by their acts and by the law from questioning the judgment. (2 Pars. on Cont. 238 ; Bigelow on Estoppel, 4, 82, note ; *Lane* v. *Clark,* Clarke Ch. 309 and authorities cited, pt. 2, p. 41; and Chitty Pl. 354; *French* v. *Shotwell,* 6 Johns. Ch. 235 ; 20 Johns. 668 ; *Campbell* v. *Butts,* 3 N. Y. 175; *Woodgate* v. *Fleet,* 44 id. 1; *People* v. *Johnson,* 38 id. 62; Rorer on Jud. Sales, 171; *Thomson* v. *Tolune,* 2 Pet. U. S. Sup. Ct. 157; *Iverson* v. *Loberg,* 26 Ill. 179, 182 ; *Elliott* v. *Piersol,* 1 Pet. 328; *Florentine* v. *Barton,* 2 Wall. 210–216; *Parker* v. *Kane,* 22 How. 14; *Grignons' lessee* v. *Astor,* 2 id. 319.) Roberts acquired a good and perfect lien, and the judgment duly given, and establishing that fact, should

not be interfered with. (*Clinton* v. *Hope Ins. Co.*, 45 N. Y. 454; Atkinson on Titles, 14; Sugden on Vendors, 270; Gerard on Titles to Real Estate, 472; *Loonie* v. *Hogan*, 9 N. Y. 435; *Miller* v. *Clark*, 2 E. D. Smith, 543; 3 id. 637; 1 id. 661; 4 Abb. Pr. 205; 57 Barb. 165; 2 Abb. Pr. 93; 3 Cranch C. C. 365; 2 McCarter's Ch. [N. J.] 112; *White* v. *Miller*, 18 Penn. 52; Philips on Mech. Liens, 210; *Develin* v. *Mack*, 2 Daly, 98; *Belmont* v. *Smith*, 1 Duer, 676; 1 Daly, 396; *Henderson* v. *Sturges*, id. 336; 1 E. D. Smith, 625; id. 739; *Rand* v. *Leeds*, 2 Phila. 160; Philips on Mech. Liens, 84, 152; *Burdick* v. *Moon*, 24 Iowa, 418; *Donaphy* v. *Clapp*, 12 Cush. 440; *Nim* v. *Waugh*, 11 Mo. 412; *Brine* v. *Ins. Co.*, 6 Otto [U. S.], 96; *Blauvelt* v. *Woodworth*, 31 N. Y. 285; Bigelow on Estoppel, 434; *McStea* v. *Matthew*, 50 N. Y. 166; *Green* v. *Biddle*, 8 Wheat. [U. S.] 77; *Parker* v. *Anthony*, 4 Gray, 289; Philips on Mech. Liens, 106, 172; 2 Kent, 634; Cross on Liens, 24; *Meehan* v. *Williams*, 2 Daly, 372; Philips on Mech. Liens, 6, 18, 314; 21 Mo. 213; 6 Cal. 295; 2 Brown [Penn.], 229; 5 Dutcher [N. J.], 468; *Mer. Ins. Co.* v. *Mazange*, 22 Ala. 180; Domat's Civil Law by Strahan, § 1744; 42 Me. 77; 15 Ark. 73; *Jackson* v. *Cumming*, 5 M. & W. 343; *Houghton* v. *Matthews*, 3 B. & P. 492; 2 Kent, 812, marg. 634; *Milner* v. *Williams*, 3 Whart. 485; *Jackson* v. *Cummin*, 5 M. & W. 342; Sugden on Vendors, 9; 1 Cruise's Dig. 486; *Lutz* v. *Ely*, 3 E. D. Smith, 624; 2 Pars. on Cont. [6th ed.] 660; *Cutler* v. *Powell*, 2 Smith's Lead. Cas. and Notes; *Hayward* v. *Leonard*, 7 Pick. 181; 13 Wend. 276; Chitty on Contracts, 451; 17 N. Y. 173; 14 Barb. 174; 35 id. 602; *Lindon* v. *Hepburn*, 3 Sandf. 668; *Jackson* v. *Lopping*, 1 Wend. 388; *Livingston* v. *Tompkins*, 4 Johns. Ch. 415; 16 Paige, 414; 2 Sugden on Vendors, 514; *Parkhurst* v. *Van Cortlandt*, 1 Johns. Ch. 273; 2 Story's Eq. Jur. 799*a*, 799*b*, 273, 376, 1237, 1239; *Green* v. *Biddle*, 8 Wheat. [U. S.] 77, 78; *Foley* v. *Gough*, 4 E. D. Smith, 724; *Meehan* v. *Williams*, 36 How. 73; 2 Daly, 367; *Schneider* v. *Hobbin*, 41 How. 232; *Carroll* v. *Caughlin*, 7 Abb. Pr. [N. S.] 72; *Gilbert* v. *Reteler*, 38 N. Y. 165; 2 Cruise's Dig. 46; *Oates*

v. *Haley*, 1 Daly, 343.) The plaintiffs were not entitled to be parties to that action. (Phillips on Mech. Liens, 35; Laws of 1851, § 12; *Fitzpatrick* v. *Boylin*, 57 N. Y. 433; *Hallahan* v. *Hubart*, 4 Daly, 209; Laws of 1863; Phillip's Lien Laws, 35; 1 Greenleaf on Evidence, 587, 585; *Res Adjudicata and Stare Decisis* [Wells], 23, 26, 504; *Hall* v. *Nelson*, 14 How. 32; *Stephenson* v. *Farerweather*, 21 id. 449; 3 Parsons on Contracts, 283, note; *Williamson* v. *Brown*, 15 N. Y. 359; 2 Blackstone Com. 41; Bigelow on Estoppel, 82, 4 and note; *People* v. *Johnson*, 38 N. Y. 63; *Woodgate* v. *Fleet*, 44 id. 1; *Park* v. *Jackson*, 11 Wend. 452.) The burden of proof was upon plaintiffs, and the evidence was required to be " clear, positive and entirely credible." (*Chappell* v. *Potter*, 11 How. 365; *Moser* v. *Polhamus*, 4 Abb. Pr. [N. S.] 442; *Cooper* v. *Ball*, 14 How. 295; *Munn* v. *Worrall*, 16 Barb. 221; *State of Michigan* v. *Phœnix Bk.*, 33 N. Y. 9, 25; 2 Wait's Pr. 43; Philips on Mech. Liens, 338; *Blauvelt* v. *Woodworth*, 31 N. Y. 285.) Under the contract of purchase Hill became owner of the land. (Atkinson on Titles, 14; *Paine* v. *Miller*, 6 Ves. 349; *Hartford* v. *Purner*, 1 Modd. 532; *Revel* v. *Hussey*, 2 B. & B. 280.) Hill having gone into possession of the land his ownership would, from that fact alone, be presumed. (*Brown* v. *Bowen*, 30 N. Y. 519; *Hill* v. *Draper*, 10 Barb. 454; *Blunt* v. *Aiken*, 15 Wend. 522; *Miller* v. *Clark*, 2 E. D. Smith, 543; 4 id. 772.)

*Justus Palmer*, for respondents. The consideration for the land not having been paid by Hill, the lien could not affect. Davenport's title. (*Payne* v. *Wilson, et al.*, 74 N. Y. 348.) Defendant's lien, if a lien at all, was subsequent to the mortgage and cut off by the foreclosure. (1 Perry on Trusts, § 222, p. 266.) Hill had no interest at the time the lien was filed that can now be reached by the defendant, Roberts. (2 Perry on Trusts, § 870; *Ocean Nat. Bk. of N. Y.* v. *Alcott*, 46 N. Y. 12; *Garfield* v. *Hatmaker*, 15 id. 375; 1 Perry on Trust, § 218, pp. 260, 261; *Payne* v. *Wilson*, 74 N. Y. 355; *Bostwick* v. *Frankfield*, 74, 287.) The Statute of Limitations

clearly applies to this case as between Davenport and Hill, and to the assignees of Hill, either by actual assignment of the contract by Hill or by operation of law, as by the filing of the lien. (*Peters* v. *Delaplain*, 49 N. Y. 362; Code of Civil Procedure, §§ 388, 396.) The Statute having once commenced to run was not suspended by the death of the executors, even if the fact were that they had both died before the limitations had expired. (*Beach* v. *Reynolds*, 53 N. Y. 10; Angell on Limitations, Chap. 11, § 23; Chap. 37, p. 601, § 485; *Demorest* v. *Wyncoop*, 3 Johns. Ch. 146; *Hamilton* v. *Cummins*, 1 id. 517; *Aythorp* v. *Comstock*, 2, 482; *Petit* v. *Shepherd*, 5 Paige, 493.) To constitute a cloud upon title there need not be a title upon record apparently valid. It is sufficient if there be a deed valid upon its face, accompanied with a claim of title, based upon facts showing apparent title. (*Fonda* v. *Sage*, 48 N. Y. 173; *Allen* v. *City of Buffalo*, 39 id. 386; *Tisdale Jones*, 38 Barb. 523; *Leek* v. *Ray*, 43 Cal. 83; *Griffin* v. *Carter*, 5, 413; *Eldridge* v. *Smith*, 348, 487; *City of Hartford* v. *Chipman*, 21 Conn. 488; *Larmon* v. *Jordan*, 56 Ill. 204.) Court will not enforce a resulting trust after a great lapse of time or *laches* on the part of the supposed " *cestui que trust*," especially when it appears that the supposed nominal purchaser has occupied and enjoyed the estate. (1 Perry on Trusts § 141.) All purchasers after the first purchase for value and without notice, including the plaintiffs, took the property discharged of all equitable claims. (1 Perry on Trusts, § 222.) At the time the lien was filed, Hill had no interest in the premises to which the lien of Roberts could attach. (*Quimby* v. *Sloan*, 2 E. D. Smith, 594; Notes, Lien Laws, 103.) Hill's cause of action against Davenport arose on the execution of his agreement of purchase from Davenport on the 26th day of February, 1857, on payment of consideration, $6,150. The Statute of Limitations then began to run against it. (*Bruce* v. *Tilson*, 25 N. Y. 194.)

Rapallo, J. This action was brought to restrain a sale under a judgment recovered by the defendant against James Hill ren-

dered by the Court of Common Pleas of the city and county of New York in proceedings to foreclose a mechanic's lien upon three houses and lots in Forty-first street in that city. The plaintiffs when the action was brought were in possession, claiming the fee under a conveyance from John A. Davenport to Wm. R. Martin dated November 20, 1857, and from Wm. R. Martin by several mesne conveyances, to the plaintiffs. The notice of lien was filed November 16, 1857, by defendant Roberts against defendant James Hill alone, for materials furnished to him and used in the construction of the buildings. Hill never had the legal title to the property, and the only interest he ever had therein was a contract dated February 26, 1857, whereby Davenport agreed to sell the lots to Hill for $6,150, to be paid on or before the 1st of September, 1857, and Hill agreed to erect buildings thereon. Hill on the 1st of July, 1857, assigned this contract, and all his interest in the land and buildings to Martin by an assignment absolute on its face. On the 15th of September, 1857, the purchase-money which was payable to Davenport on the 1st, remaining unpaid, Davenport gave notice to Hill that he would not extend the time, and on the 1st of October, 1857, served on Hill personally a further written notice stating that in default of payment within ten days from that date he should re-enter and take possession of the property, and divest Hill of all title and sell the property on his own account. About the 1st of November, 1857, Davenport contracted to sell the lots to Martin, and on the 20th of November, 1857, Davenport conveyed the property to Martin, who afterward paid him the purchase-money, which Martin raised by making mortgages on the lots and buildings. Davenport took possession as owner, and completed the buildings and disposed of them. The plaintiff Palmer's title is derived though the foreclosure of one of these mortgages. The title of the other plaintiffs rests upon deeds from Martin and his subsequent grantees.

A few days before the execution of the deed from Davenport to Martin, viz., on the 16th of November, 1857, the notice of lien in question was filed by Roberts, under the lien law of

1851 (Laws 1851, chap. 513.)  By this act the mechanic could acquire a lien only to the extent of the right, title and interest of the owner with whom or whose agent he contracted, existing at the time of filing the notice.  In the notice of lien, Roberts stated his claim to be against Hill for materials furnished to him under a contract with him, and stated that the buildings were owned by him.

The proceeding to foreclose the lien was brought by Roberts against Hill alone, on the 11th of January, 1858.  The complaint alleged that Hill was the owner of the buildings and prayed for the sale of the right, title and interest of Hill at the time of the acquiring of the lien.  An answer was put in by Hill in September, 1858, denying his ownership, and the proceeding appears to have slumbered from that time until May 1878, when it was brought to trial at Special Term.  Findings were filed, directing a decree for the sale of the right, title and interest which Hill had in the premises on the 16th of November, 1858, and on the 18th of November, 1878, a judgment was entered reciting the above findings and conclusion, but adjudging that the premises described in the complaint be sold.

During the twenty years that the proceeding was slumbering, the title to the property passed through several hands, the plaintiffs having acquired their titles in 1866, 1869, and 1872, and they claim that the first notice they had of the alleged lien or proceedings was a notice of sale thereunder in November, 1878, and in December of the same year this action was brought to perpetually restrain the sale.

After the action had been brought, and before trial, viz., on the 22d of April, 1879, on motion of Roberts the judgment in the case of *Roberts* v. *Hill* was amended so as to make it conform to the findings and conclusions in that case by directing the sale of the right, title and interest which Hill had on the 16th of November, 1858, instead of a sale of the premises. This order was on condition that the defendant Roberts pay plaintiffs' costs and consent to a dismissal of the complaint without costs if the complaint should be dismissed by reason of the amendment.

The action was afterward tried, and resulted in a judgment for a perpetual injunction, which was affirmed at General Term.

The theory upon which this action is brought is, that a sale under the judgment would create a cloud upon the title of the plaintiffs, while the positions contended for by the defense were that the defendant had a valid lien, and a right to sell, and that his lien was paramount to the title of the plaintiffs. That Hill, under his contract with Davenport, became the equitable owner, and that the assignment by him to Martin, of his contract and his interest in the buildings, was intended only as a security for money advanced by Martin. And that the judgment recovered by Roberts against Hill was conclusive. The principles governing actions of this description seem to have been ignored by all parties. An action to remove a cloud upon title, or to restrain a sale or conveyance, upon the ground that it would create such a cloud, can only be maintained where the pretended title, which is alleged to constitute the cloud, or the proceeding which it is apprehended will create one, is apparently valid on its face, and the party in possession will be compelled to resort to extrinsic evidence to show the invalidity of the pretended title, and to defend his own. But, when the pretended claim is invalid on its face, or where it requires that extrinsic facts be proved for the purpose of establishing its validity, a court of equity will not interfere on the ground that the facts which are essential to sustain the pretended claim do not exist, but will leave the party in possession to his defense. These are the general and well-settled rules, subject, perhaps, to some exceptions in special cases, which have no application to the present one. (*Heywood* v. *City of Buffalo*, 14 N. Y. 534; *Scott* v. *Onderdonk*, id. 9; *Farnham* v. *Campbell*, 34 id. 480; *Fonda* v. *Sage*, 48 id. 173; *Town of Venice* v. *Woodruff*, 62 id. 462, 467; *Town of Springport* v. *Teutonia Savings Bk.*, 75 id. 397.)

In the present case, the paper title was clearly in the plaintiffs. A sale under the judgment of Roberts against Hill could create no cloud upon the plaintiffs' title. That judgment did

not establish as against the plaintiffs that Hill had any interest in the property. A sale under it could have no further effect than to transfer to the purchaser such title as Hill had on the 16th of November, 1858. And the purchaser would be obliged to prove Hill's title before the plaintiffs could be disturbed. The sale would have no greater effect than a conveyance by Hill of his interest, if any ; and no one will pretend that such a conveyance would be restrained, nor would the sale of land under execution against a third party be restrained at the suit of a party in possession having the paper title.

This was the case before the judgment was amended, as well as afterward. The statute gave a lien upon and authorized a sale only of Hill's interest. (Laws of 1851, chap. 513, §§ 1, 7.) The complaint of Roberts against Hill claimed only a sale of his interest. The findings directed only such a sale, and were recited in the judgment. The judgment, even though inaccurate in directing a sale of the premises generally, could affect the interest or title of no person but Hill, as he was the only defendant and the lien was only on his interest. It is very clear, therefore, that, had the point been taken that the sale sought to be restrained would not constitute a cloud upon the plaintiffs' title, it would have been fatal to the maintenance of the action, as well before the amendment of the judgment as afterward. But no such point was taken. On the contrary, it was contended throughout that the judgment was conclusive as to the right of Roberts to sell, and that Hill was the equitable owner, and the whole contention on the trial related to the merits of the claim of Roberts to a lien upon the property. It may be that the defendant did not care to obtain a dismissal of the complaint upon the ground here indicated, as it would determine nothing in relation to the merits of his claim, and he, or whoever might purchase at the sale, would have been put to an action to ascertain whether any thing passed by the sale. But, whatever may have been the reason, it is certain that the point was not raised, but the parties litigated and submitted to a decision upon the merits of Roberts' claim as against the title of the plaintiffs.

On this branch of the case we see no ground for disturbing the conclusion of the court below. Assuming that the pendency of the proceeding for the foreclosure of the lien by Roberts was constructive notice to all subsequent purchasers, it was notice only that Roberts claimed a lien upon the interest of Hill, if he had any, but it was not notice that Hill's assignment of his interest to Martin, which was prior to the filing of the lien, and was absolute on its face, was merely as security, or that Martin could not convey a good title, and there was no pretense of any other notice of these facts to Martin's grantees. He was in possession with an apparent right to convey, and purchasers from him were not bound to take notice of any latent equities, subsisting between him and Hill, inconsistent with the absolute assignment of the contract of purchase. Even if the assignment was as security only, Martin was, by virtue of the assignment of the contract, and the payment by him of the purchase-money, entitled to take the conveyance from Davenport, and reimburse himself by a sale of the property, and he appears to have done so without objection from either Hill or Roberts, and the most they, or either of them, could demand, would be an accounting with him. They could not interfere with the title of *bona fide* purchasers under a title derived from Martin. Under the facts found, a sale under the judgment against Hill would have been a futile proceeding, so far as the present plaintiffs are concerned.

The court further found as facts that Hill made default under his agreement with Davenport, and on the 1st of October, 1857, all work on the houses was suspended; that Hill was unable to complete his contract with Davenport, and abandoned said contract, and on or about the 1st of November, 1857 (which was before the filing of the notice of lien), Martin made an agreement with Davenport to purchase the property and pay the purchase-money; that Davenport conveyed it to Martin by deed dated November 20, 1857, acknowledged December 5th and recorded December 11, 1857, and Martin entered into possession, as absolute owner, on or before the last-named date, under said deed, and he and his grantees have con-

tinuously maintained an absolute possession ever since, for over twenty years; that Martin executed mortgages thereon, out of which he paid the purchase-money, and sold the premises, and the title of the plaintiffs came to them through the convey-ances and mortgages executed by Martin, and, as conclusions of law, the court finds that Hill had no interest, legal or equitable, in the premises at the time of filing the lien or subsequently.

As before stated, the defendant could properly have declined to try the title of Hill in this action, and could have taken the ground that a sale of his interest, whatever it might be, would be no cloud upon the plaintiffs' title. But, instead of doing so, he elected to try the question of Hill's title in this action, and insisted that Hill had an equitable title, and that Roberts' lien attached thereto and was preserved in full force, and was paramount to the title of the plaintiffs, and that he was entitled to a sale thereof as against the plaintiffs. We are of opinion that he has failed to sustain these claims, and that the controversy should be terminated by the affirmance of the judgment, but without costs in this court to either party, as in our judgment the action was unnecessarily brought.

The points made, in respect to a portion of the costs, being improperly included in the judgment, and in respect to the extra allowance, and the premises being incorrectly described in the judgment, do not properly arise on this appeal.

The judgment should be affirmed, without costs in this court.

All concur.

Judgment affirmed.